IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| TRAVIS C.,[1] <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2] <br><br> Defendant. | Case No. 6:20-cv-00426-SB <br><br> **OPINION AND ORDER** |

**BECKERMAN, U.S. Magistrate Judge.**

Travis C. ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. §

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] Kilolo Kijakazi became the acting Commissioner of the Social Security Administration on or about July 9, 2021 and is substituted for Andrew Saul as the defendant. *See* FED. R. CIV. P. 25(d)(1).

PAGE 1 – OPINION AND ORDER

405(g), and all parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, the Court reverses the Commissioner's decision because it is based on harmful legal error and not supported by substantial evidence in the record.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I.  PLAINTIFF'S APPLICATIONS

Plaintiff was born in February 1990, making him twenty-five years old on January 1, 2016, his alleged disability onset date. (Tr. 26, 92, 120.) Plaintiff graduated from high school and

PAGE 2 – OPINION AND ORDER

has past relevant work experience as a hand packager and industrial truck operator. (Tr. 25, 68-69, 85-86.) In his applications, Plaintiff alleged disability due to depression and anxiety. (Tr. 92, 121.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on January 31, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 18.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on March 21, 2019. (Tr. 65-89.) On April 15, 2019, the ALJ issued a written decision denying Plaintiff's applications. (Tr. 18-27.) On January 16, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (Tr. 3-9.) Plaintiff now seeks judicial review of the ALJ's decision. (Compl. at 1-2.)

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

PAGE 3 – OPINION AND ORDER

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

## III.   THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 18-27.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2016, his alleged disability onset date. (Tr. 20.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "[D]epression, anxiety, somatic symptom disorder and alcohol use disorder[.]" (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (Tr. 21.)

The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform "full range of work," subject to these limitations: (1) Plaintiff "can understand, remember and carry out only short and simple instructions"; (2) Plaintiff "can have no more than occasional interactive contact with the public"; and (3) Plaintiff "can have no more than frequent interactive contact with co-workers or supervisors." (Tr. 22.) At step four, the ALJ concluded that Plaintiff was not disabled because he could perform his past relevant work as a hand packager. (Tr. 25.) In the alternative, the ALJ proceeded to step five, where she found that Plaintiff was not disabled because a significant number of jobs existed in the national economy

PAGE 4 – OPINION AND ORDER

that he could perform, including work as a floor waxer, wall cleaner, and industrial cleaner. (Tr. 27.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by failing to provide legally sufficient reasons for discounting the opinions of her treating nurse practitioner, Terri Squires ("Squires"), and examining psychologist, Scott Alvord, Ph.D. ("Dr. Alvord"). As explained below, the Court concludes that the Commissioner's decision is based on harmful legal error and not supported by substantial evidence in the record. Accordingly, the Court reverses the Commissioner's denial of benefits.

### I.    MEDICAL OPINION EVIDENCE

#### A.    Applicable Law

Plaintiff filed his applications in August 2017. (Tr. 18.) "For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. 416.920c governs how an ALJ must evaluate medical opinion evidence." *Tyrone W. v. Saul*, No. 3:19-cv-01719-IM, 2020 WL 6363839, at *6 (D. Or. Oct. 28, 2020) (citation omitted); *see also Linda F. v. Saul*, No. 20-cv-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020) ("Because [the] plaintiff filed her applications after March 27, 2017, new regulations apply to the ALJ's evaluation of medical opinion evidence.").

Under the new regulations, the Commissioner will "no longer give any specific evidentiary weight," let alone controlling weight, "to any medical opinion." *See Allen O. v. Comm'r of Soc. Sec.*, No. 3:19-cv-02080-BR, 2020 WL 6505308, at *5 (D. Or. Nov. 5, 2020) (simplified), *appeal filed* No. 21-350006 (9th Cir. Jan. 4, 2021). Instead, as this Court recently explained, "the ALJ considers all medical opinions and evaluates their persuasiveness based on supportability, consistency, relationship with the claimant, specialization, and 'other factors.'"

PAGE 5 – OPINION AND ORDER

*Robert S. v. Saul*, No. 3:19-cv-01773-SB, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021) (simplified).

"The new regulations require ALJs to articulate how persuasive they find all of the medical opinions and explain how they considered the supportability and consistency factors." *Id.* (simplified). At a minimum, "'this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion.'" *Id.* (quoting *Linda F.*, 2020 WL 6544628, at *2). Accordingly, "'the more relevant the objective medical evidence and supporting explanations presented and the more consistent with evidence from other sources, the more persuasive a medical opinion or prior finding.'" *Id.*

"The ALJ may but is not required to explain how other factors were considered," including (1) the "relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination)," (2) "whether there is an examining relationship," (3) specialization, and (4) "other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Id.* The ALJ is, however, "required to explain 'how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical,'" and courts "must 'continue to consider whether the ALJ's analysis has the support of substantial evidence.'" *Id.* (citations omitted).³

---

³ The Commissioner argues that the new regulations, which "differ substantially from prior regulations" and "eliminate any semblance of a hierarchy of medical opinions," "supersede case law developed under the prior regulatory," such as case law "requiring 'clear and convincing' or 'specific and legitimate' reasons to discount a medical opinion." (Def.'s Br. at 2- 4.) Consistent with its prior decisions, the Court will consider whether the ALJ adequately

PAGE 6 – OPINION AND ORDER

B. **Analysis**

Plaintiff argues the ALJ failed to provide legally sufficient reasons for discounting the opinions of Plaintiff's treating nurse practitioner, Squires, and examining psychologist, Dr. Alvord.

1. **Squires**

a. **Squires's Opinion**

Squires completed a medical source statement on November 7, 2018. (Tr. 645-52.) In her medical source statement, Squires stated that she has treated and managed medications for Plaintiff on a monthly basis since March 26, 2018; Plaintiff suffers from "[s]ignificant" and "severe" anxiety that interferes with his ability to function; Plaintiff's symptoms impair his ability to deal with stressful situations and purse his passions like culinary school; and in response to a question about whether Plaintiff would be able to avoid missing more than two days of work each month, Squires stated that Plaintiff is "not stable" and she is working with Plaintiff on his medications and gene testing to achieve a reduction in Plaintiff's symptoms. (Tr. 645-46.)

Additionally, Squires opined that Plaintiff is markedly limited in his ability to carry out complex instructions. (Tr. 649.) Squires added that Plaintiff is unable to leave his house the majority of the time due to anxiety and panic attacks; Plaintiff self-medicates with alcohol and cannabis, which is "extremely common with anxiety patients [and getting] better" for Plaintiff;

---

addressed the persuasiveness, including the supportability and consistency, of Squires and Dr. Alvord's opinions, because "[t]he Ninth Circuit has not yet addressed whether or how the new regulations alter the standards set forth in prior cases for rejecting a medical opinion," and "the new regulations still require the ALJ to explain [his] reasoning for discounting a medical opinion . . . to allow for meaningful judicial review." *Robert S.*, 2021 WL 1214518, at *4 (citations omitted).

Plaintiff's anxiety symptoms would "[p]reclude performance for 15% or more of a 7.5 hour workday"; and Plaintiff would miss "[m]ore than 4 days [of full-time work] per month." (Tr. 650-52.)

### b.     The ALJ's Treatment of Squires's Opinion

The ALJ found Squires's opinion "not persuasive." (Tr. 25.) The ALJ provided two reasons for finding Squires's opinion not persuasive. First, the ALJ found that Squires's opinion was not persuasive because "it does not contain functional limitations indicating what [Plaintiff] is capable of." (*Id.*) Second, the ALJ found that Squires's opinion was not persuasive because it "fails to consider the numerous treatments [Plaintiff] has declined to attempt." (*Id.*)

### c.     Disposition

The ALJ failed to provide legally sufficient reasons, supported by substantial evidence, for discounting Squires's opinion. As an initial matter, the Commissioner argues that the ALJ appropriately discounted Squires's opinion because Squires "stated that [Plaintiff] had significant functional limitations but did not explain what functional limitations," noting that the "supportability and explanation of the medical opinion is one of the most important factors in assessing its persuasiveness." (Def.'s Br. at 6.) The Court finds the Commissioner's argument unpersuasive.

The ALJ's first reason—Squires's opinion does not contain functional limitations—fails because Squires's opinion includes functional limitations, such as the ability to meet customary tolerances for absences and remain on task during an eight-hour workday, which is dependent on Plaintiff's ability to sustain attention and concentration for extended periods. (*See* Tr. 651). The Ninth Circuit has referred to such findings as "limitations" that must be included in the RFC (and VE hypothetical derived therefrom), assuming the underlying opinion has not been discounted for legally sufficient reasons. *See, e.g.*, *Weirick v. Saul*, 825 F. App'x 446, 449 (9th Cir. 2020)

PAGE 8 – OPINION AND ORDER

("The ALJ erred in determining Weirick's RFC. The ALJ found Weirick would be off task for no more than 5% of a workday and did not include likely absences as a limitation. In determining [the] RFC, the ALJ must consider a claimant's physical and mental abilities, as well as the total limiting effects caused by medically determinable impairments[.] . . . [The] treating physicians stated [Weirick] would be off-task for more than 10% of the workday and would be absent more than six days per month. The treating physicians' opinions as to those limitations are consistent with objective medical evidence and should have been credited by the ALJ. The [VE] testified that a person with those limitations would be precluded from competitive employment.") (simplified).

The ALJ's other reason for discounting Squires's opinion—failure to consider the treatments that Plaintiff has declined to attempt—is also not supported by substantial evidence. The Commissioner argues that Squires "did not appear to consider [Plaintiff's] refusal to try various medications when assessing significant functional limitations," and "there is no evidence that [Squires] was aware of [Plaintiff's] repeated refusal to try different medications." (Def.'s Br. at 6.) Not so.

The record demonstrates that Squires considered Plaintiff's past issues with medications (i.e., side effects), which is what the ALJ appeared to be referring to when she cited treatments that Plaintiff has declined. (*See* Tr. 23-24, the ALJ referred generally to Plaintiff's "reluctance to try different treatments," but only specifically noted that Plaintiff "reject[ed] many medications because of the potential for [recurrence of] weight gain," "reported not trialing a new medication due to concerns about [a recurrence of] weight gain," and "declined to trial a new medication"; Tr. 525, January 2, 2018, "Of note, [Plaintiff] has gained 32 lbs since 8/28"; Tr. 61, April 10, 2019, Plaintiff expressed concern that he had "gained 60-70 pounds"; *see also* Tr. 543, 547,

PAGE 9 – OPINION AND ORDER

April 2, 2018, Squires noted that she used gene testing to determine that Effexor was the "worst" medication for Plaintiff, instructed Plaintiff to stop taking Effexor "due to severe gene-drug interaction and no effect and continue Wellbutrin," and stated that the "gene test[ing] done . . . matches up to [Plaintiff's] past [adverse events] with meds and Effexor not working and 'numbing' [Plaintiff] significantly" and "medication consent [was] given" due to a "moderate gene to drug interaction with Wellbutrin"; Tr. 77, March 21, 2019, Plaintiff informed the ALJ that he was "trying [different] medication right now" because some of his past medications were "worsening things" in terms of his anxiety and panic; Tr. 39-40, March 7, 2019, Squires stated that she reviewed the results of Plaintiff's "gene testing . . . and labs" as part of his medication management, described Plaintiff's medication history, and noted that Plaintiff started taking "psych med[s]" when he was a teenager, citalopram was "not helpful," Abilify was "slightly better then increased due to no effect [and] 15 mg not doing anything and mother thought [Plaintiff] needed a different medication," Plaintiff "vomited" after taking Latuda, Plaintiff "shook uncontrollably" on Zoloft, and Plaintiff was "irritable" and had "more anxiety" on Wellbutrin).[4]

The record evidence discussed above and below also demonstrates that although Plaintiff worried about the side effects of certain medications, Plaintiff nevertheless completed trials of numerous medications. (*See* Tr. 430, July 26, 2017, "Patient saw several PCPs in Iowa who trialed Prozac, Zoloft, Citalopram and Trazodone (caused am sedation) and Xanax, which were ineffective.").

---

[4] The Appeals Council made Squires's March 7, 2019 treatment note part of the record (Ct. Tr. Index at 2; Tr. 3-9), but the ALJ did not have the opportunity to review this record. Nevertheless, the treatment note is based largely on medical records that the ALJ was able to review.

Further, the Court notes that the ALJ failed to consider that Plaintiff's approach to medications and treatment may represent a symptom of his illness. (*See* Tr. 423, August 25, 2017,"We discussed risks and benefits of Olanzapine and he agreed to a trial but never took it due to [worrying about] possible weight gain. [More recently, the] patient declines consideration of any medication with likely weight gain such as Mirtazapine or Zyprexa. . . . Hydroxyzine trial started for breakthrough anxiety."; Tr. 427, August 25, 2017, "Medications, even when helpful are difficult for him to take consistently. . . . [Plaintiff] has had difficulties with adherence to the treatment plan often, which holds back progress."; Tr. 584, March 13, 2018, Plaintiff reported that "[n]early every day," he is bothered by his inability to "stop or control worrying" and "[w]orrying too much about different things"; Tr. 680, November 7, 2018, Plaintiff's provider noted Plaintiff's "excessive worry about a number of events"; Tr. 684, February 17, 2019, Plaintiff reported that his anxiety "impacts his desire[] to . . . attend appointments"). The Ninth Circuit has made similar observations in other cases addressing mental health impairments. *See Wake v. Comm'r of Soc. Sec.*, 461 F. App'x 608, 609 (9th Cir. 2011) (noting that the "failure to comply with treatment may represent a symptom" of the claimant's impairments, and "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation") (simplified).

Additionally, the ALJ failed adequately to discuss the side effects of Plaintiff's medications or address whether such effects supported adequately Plaintiff's decision to discontinue or not use certain mental health medications. *Cf. McLean v. Colvin*, 648 F. App'x 621, 622 (9th Cir. 2016) (observing that the ALJ failed "to address explicitly whether the side effects supported adequately the decision to temporarily discontinue use of his mental health medication").

Based on the findings above, the Court concludes that the ALJ failed to provide legally sufficient reasons, supported by substantial evidence in the record, for discounting Squires's opinion.

### 2. Dr. Alvord

#### a. Dr. Alvord's Opinion

Dr. Alvord evaluated Plaintiff and completed a medical source statement on February 17, 2019. (Tr. 683-91.) Dr. Alvord explained that his evaluation included a clinical interview, mental status examination, review of available records (including the state agency psychologist's opinion on reconsideration, Squires's opinion, and records that postdate the state agency's review), and psychological testing measures, including the "Wechsler Adult Intelligence Scale 4th Edition." (Tr. 683.) Dr. Alvord also explained that (1) Plaintiff provided information that was "considered reliable, valid and consistent with the records provided"; (2) "[v]alidity issues were not suspected"; (3) Plaintiff "meets the criteria for a Panic Disorder with Agoraphobia"; (4) he "see[s] evidence of a Depressive Disorder not otherwise specified"; (5) he "suspect[s] some level of somatic manifestation of psychiatric distress as contributing to [the resting] tremors" observed during Plaintiff's evaluation, and therefore he "opine[d] a Somatic Symptom Disorder"; (6) Plaintiff is "treated psychiatrically now but continues to be quite symptomatic"; (7) Plaintiff's "prognosis is guarded as he has evidently been treating consistently for three years with limited benefit"; and (8) Plaintiff "should be monitored closely for increasing suicidal ideation." (Tr. 683-86.)

In his medical source statement, Dr. Alvord opined that Plaintiff is markedly limited (i.e., a "serious limitation" that reflects "a substantial loss in the ability to effectively function" in the area) in his ability to interact appropriately with the general public or supervisors. (Tr. 687-88.) Additionally, Dr. Alvord stated that alcohol and/or substance abuse does not contribute to

PAGE 12 – OPINION AND ORDER

Plaintiff's limitations, and Plaintiff's impairments would "[p]reclude performance for 10% of a 7.5 hour workday" and cause Plaintiff to miss "3 or 4 days [of full-time work] per month." (Tr. 689-91.)

### b. The ALJ's Treatment of Dr. Alvord's Opinion

The ALJ found Dr. Alvord's opinion "not persuasive." (Tr. 25.) The ALJ provided these reasons for discounting Dr. Alvord's opinion: "Dr. Alvord fails to reconcile his findings with [Plaintiff's] history of social interaction including girlfriends, roommates and disc golf friends. He also does not mention [Plaintiff's] longstanding, daily marijuana use and frequent alcohol use." (*Id.*)

### c. Disposition

The Court finds that the ALJ did not commit harmful error in discounting Dr. Alvord's opinion.

As an initial matter, however, the Court agrees with Plaintiff that in discounting Dr. Alvord's opinion, the ALJ erred in finding that Dr. Alvord failed to "mention" Plaintiff's longstanding, daily marijuana use and frequent alcohol use, because the record demonstrates that Dr. Alvord answered a question about whether alcohol and/or substance abuse contributed to Plaintiff's limitations. (*See* Tr. 689, setting forth that question; *see also* Tr. 684, Dr. Alvord inquired about Plaintiff's current or past use of alcohol or illicit substances during his clinical interview).

The Commissioner argues that the ALJ did not err in discounting Dr. Alvord's opinion on this ground because the record demonstrates that Plaintiff drank alcohol and used marijuana during the period at issue, and he did not disclose his alcohol or marijuana use to Dr. Alvord. (Def.'s Br. at 7.) The ALJ, however, never stated that she was discounting Dr. Alvord's opinion because Plaintiff provided him with inaccurate information regarding his alcohol and marijuana

PAGE 13 – OPINION AND ORDER

use, and the Court is constrained to review the reasons the ALJ asserts. *Cf. Caldwell v. Saul*, 840 F. App'x 907, 910 (9th Cir. 2020) ("[L]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.") (simplified); *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("But the ALJ did not identify those inconsistencies. We are constrained to review the reasons the ALJ asserts.") (simplified).

Furthermore, the record demonstrates that Dr. Alvord reviewed records documenting Plaintiff's reports about current and past use of alcohol and marijuana. (*See* Tr. 683, Dr. Alvord reviewed records from Compass Behavioral Health dated "11/11/2017-08/29/2018" and "11/07/2018-01/04/2019"; Tr. 531, March 7, 2018, Compass Behavioral Health, Plaintiff reported that he had "a problem with alcohol 4-6 years ago where he was drinking 1/2 [a] bottle of spirits daily," he now "drinks occasionally maybe once a week usually a beer to relax," and he smokes "MJ 1 bowl a day"; Tr. 629, June 8, 2018, Compass Behavioral Health, Plaintiff received "[p]sycho education on how [his] marijuana use can have [an] impact on [mental health] and anxiety").

Despite the above error, the Court concludes that the ALJ did not commit harmful error because she provided at least one valid, legally sufficient reason for discounting Dr. Alvord's opinion: There was a conflict between Dr. Alvord's opinion and Plaintiff's reported social activities, such as having girlfriends and roommates and playing disc golf with friends. *See Darden v. Saul*, 855 F. App'x 352, 354 (9th Cir. 2021) (explaining that it is appropriate for an ALJ to discount a medical opinion based on its inconsistency with the claimant's reported activities).

PAGE 14 – OPINION AND ORDER

Plaintiff argues that there is no "actual conflict" between Dr. Alvord's opinion and Plaintiff's activities, and notes that Dr. Alvord was aware of his girlfriend. (Pl.'s Opening Br. at 11.) In the Court's view, the ALJ's finding was rational and supported by substantial evidence (i.e., more than a mere scintilla of evidence but less than a preponderance), and Plaintiff's arguments to the contrary amount to advocating for alternatives to the ALJ's rational interpretation of the record. *See Crawford v. Berryhill*, 745 F. App'x 751, 753 (9th Cir. 2018) (rejecting objections to the ALJ's findings because they "amount[ed] to advocating for alternatives to the ALJ's rational interpretation of the record and therefore [did] not demonstrate error").

To be sure, Dr. Alvord opined that Plaintiff is markedly limited (i.e., a "serious limitation" that reflects "a substantial loss in the ability to effectively function" in the area) in his ability to interact appropriately with the general public or supervisors. (Tr. 687-88; *see also* Tr. 684, during his evaluation, Plaintiff informed Dr. Alvord that "he panics when he leaves his home"). It was reasonable for the ALJ to identify a conflict between Dr. Alvord's opinion and Plaintiff's reported activities reflecting a fairly active social life outside the home. (*See* Tr. 429, March 7, 2017, Plaintiff was "living with [his] former girlfriend but now more as friends and [a] roommate by necessity"; Tr. 356, March 16, 2017, Plaintiff reported that "his anxiety has been a little better since he has been playing disc golfing with his friends . . . [but] he still feels he gets 'stuck' in his head with anxious thoughts"; Tr. 429-30, May 8, 2017, Plaintiff reported that he was no longer living with his ex-girlfriend of six years and he was "[g]etting out of the house daily now [to play] disc golf with friends and enjoys it"; Tr. 276-80, September 11, 2017, Plaintiff's new girlfriend reported that Plaintiff lives with her and her son, goes outside "often whenever it's needed or to play sports," shops for groceries and pet supplies "when needed," and

plays disc golf "with friends" on a regular basis and "as often as possible"; Tr. 285-88, September 26, 2017, Plaintiff reported that he plays disc golf with a friend "[a]lmost every day" but "play[s] . . . less because of [his] anxiety").

In sum, the ALJ did not commit harmful error in discounting Dr. Alvord's opinion. *See Gilliland v. Saul*, 821 F. App'x 798, 799 (9th Cir. 2020) ("[If the] ALJ provided at least one valid reason to discount [the evidence at issue], error in remaining reasons is harmless[.]") (citation omitted).

## II.    REMEDY

### A.    Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citation omitted). In a number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* at 1020 (citations omitted). Even when the credit-as-true standard is met, the district court retains the "flexibility to remand for further proceedings when the record [evidence] as a whole creates serious doubt as to

whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

**B.     Analysis**

Remand for further proceedings is necessary here because outstanding issues in the record remain that the ALJ must resolve before a determination of disability can be made, including weighing Squires's improperly discounted opinion with the other evidence. *See Bradshaw v. Colvin*, 642 F. App'x 677, 678 (9th Cir. 2016) ("Because we conclude that the ALJ failed to adequately explain why he rejected certain evidence, and that the error was not harmless, we vacate and [exercise our discretion to] remand for further proceedings."); *Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) ("Remand for further proceedings is proper because outstanding issues in the record remain that must be resolved before a determination of disability can be made, including . . . weighing [the improperly discounted] testimony with the other evidence.").

The Court also notes that the record raises some doubt about the ultimate issue of disability. For example, in a third-party function report dated September 11, 2017, Plaintiff's girlfriend reported that Plaintiff lives with her and her son and Plaintiff babysits, changes her son's diapers, and feeds her son. (Tr. 276-77.) In an adult function report dated September 26, 2017, however, Plaintiff reported that he does not "take care of anyone else such as a wife/husband, children, grandchildren, parents, friend, [or] other [person]." (Tr. 285; *see also* Tr. 82-83, March 21, 2019, the ALJ asked about Plaintiff's girlfriend's report regarding childcare and Plaintiff stated that there is a "babysitter" and he "barely" and "very rare[ly]" helps out).

Similarly, Plaintiff reported his alcohol and marijuana use to the ALJ and his treating medical providers. (*See* Tr. 704, January 16, 2019, "He presented with poor hygiene [and] smelled like marijuana. 'Usually daily.' (smokes marijuana)."; Tr. 81-82, March 21, 2019,

PAGE 17 – OPINION AND ORDER

Plaintiff reported that he drinks alcohol "maybe twice a week at night" and uses marijuana because "[f]or as long as this has been going on, it's the one thing that's able to snap [him] out of a complete panic"). During Dr. Alvord's consultative examination on February 17, 2019, however, Plaintiff "denied [any] current or past abuse of alcohol or use of illicit substances." (Tr. 684.)

The Court also notes that Plaintiff was removed from a waitlist for Individual Placement/Supported Employment ("ISP") after reporting that he was "no longer interested" (Tr. 632), and that many of Plaintiff's issues appear to be situational in nature. (*See* Tr. 388, July 18, 2016, Plaintiff's provider noted that Plaintiff "had a bright look in his eye when talking about his hopes for living with his girlfriend and being happy," but reported that he has "a lot of fears about his relationship, pain about [a] past event when [his] girlfriend cheated on him, and anxiety currently about trusting his girlfriend"; Tr. 377, October 11, 2016, Plaintiff reported that he was "thinking about finding general labor work so he can keep to himself [and because he] has some experience in this line of work," but also stated "'when I'm at work how do I know that everything isn't collapsing around me[]' regarding his girlfriend cheating on him," and Plaintiff's provider noted that "once [Plaintiff] mentioned anxiety about his girlfriend he became more shaky and withdrawn"; Tr. 429, November 23, 2016, Plaintiff's provider noted that Plaintiff's anxiety was "high" and Plaintiff's girlfriend reported that she "cheated on him 3 years ago [and] yesterday he learned she was texting intimately and sexually with two men"; Tr. 366-67, February 20, 2017, Plaintiff reported that he was "coming into therapy because he hasn't been able to work due to having daily panic attacks," his anxiety "has been worse since he just recently broke up with his girlfriend, whom he is still living with at this time," and he "assaulted the man that his girlfriend cheated on him with," which resulted in him "doing work crew for 4

days"; Tr. 429-30, May 8, 2017, Plaintiff reported that he was no longer living with his ex-girlfriend, who Plaintiff dated for six years, and that he was "[g]etting out of the house daily now"; Tr. 40, March 7, 2019, "1 year ago, his girlfriend was with another man, he got into legal trouble").

For these reasons, the Court concludes that further administrative proceedings are necessary here.

## CONCLUSION

Based on the foregoing reasons, the Court REVERSES the Commissioner's decision and REMANDS this case for further administrative proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED this 29th day of September, 2021.

*Stacie F. Beckerman*

HON. STACIE F. BECKERMAN
United States Magistrate Judge